## W. W. TRACY, Respondent, v. THOS. J. BUCHANAN, Appellant.

### Kansas City Court of Appeals, December 9, 1912.

1. **CONTRACTS: Sale and Delivery of Shares of Stock.** Plaintiff sued the defendant, the president and manager of California Telephone Company, to recover damages for breach of a contract for the sale and delivery of certain shares of stock in the above named company. The transaction was carried on by letter, the contents of which were not in evidence, because neither originals nor copies were in existence, but there was evidence that defendant destroyed the bill of sale and other papers, after the contract was entered into. Judgment was for defendant, but the trial court granted a new trial because an instruction, which in substance told the jury that defendant was plaintiff's agent, was given to the jury. *Held,* such an instruction was erroneous, and a new trial was rightfully given.

2. **EVIDENCE: Spoliation of Documents.** Where spoliation of documentary evidence is proved against a party, he is held to admit the truth of the complaining party's allegations.

3. **CONTRACTS: Breach: Damages.** Where the contract of sale of certain shares of stock is admitted and a breach indubitably established, there is only one issue of fact to go to the jury, viz., the quantum of damages.

4. **INSTRUCTIONS: Measure of Damages: New Trial.** An instruction on the measure of damages which directed a verdict for defendant unless the jury found that plaintiff had suffered substantial damages for the breach of the contract, is erroneous and sufficient to warrant an order for a new trial.

Appeal from Moniteau Circuit Court.—*Hon. R. A. Breuer,* Special Judge.

AFFIRMED.

*R. M. Embry* for appellant.

(1) The instructions given for plaintiff and defendant, all taken together, covered every theory of the case. A new trial should not have been granted for the reason assigned by the court, because instructions B and C properly declare the law, and taken together with plaintiff's instruction declare the law of the whole case. Batten v. M. W. A., 131 Mo. App. 381. (2) The plaintiff cannot complain that he did not receive nominal damage, because he asked no instruction, directing the jury to so find. The plaintiff must ask for his instructions. Joy v. Cole, 124 Mo. App. 569; Morgan v. Mulhall, 214 Mo. 451. (3) On questions of damage if plaintiff desire specific instructions he must ask for them. Plaintiff's first instruction was correct at least as far as it went. Armelio v. Whitman, 127 Mo. App. 698. (4) Plaintiff's instruction No. 1 and defendant's instruction numbered "B," bear upon the same part of the case, and when read together properly declare the law. These two instructions must be read as a whole. Forge Co. v. Gas Co., 135 Mo. App. 86; Chalice v. Witte, 81 Mo. App. 84; Bush v. Fisher 85 Mo. App. 1; Carriage Co. v. Gilmore, 123 Mo. App. 9. (5) Under general denial, defendant had the right to show he was acting as agent of plaintiff in purchase of the stock. The proof of the agency disproved the allegations of the petition. Therefore defendants instruction "C" was proper. Hellsmith v. Benoist, 144 Mo. App. 695; Wilkerson v. Farnham, 82 Mo. 672; Madison v. Railroad, 60 Mo. App. 599.

*E. T. Hockaday* and *Harry J. Libby* for respondent.

(1) An appellate court reviewing the action of the trial court in granting a new trial will look to every assignment of error made in the motion therefor, and

not merely to the reasons assigned by the trial judge. This, because, the appellate court is dealing with the conclusions reached by the trial court, and not the process of reasoning by which that conclusion is reached, and if the order can be sustained on any ground will affirm the judgment. Bick v. Tansey, 181 Mo. 526; Mockowik v. Railroad, 196 Mo. 568; Morelock v. Railroad, 112 Mo. App. 644; Herman v. McLean, 139 Mo. App. 429. (2) The trial court erred in rejecting the testimony of the witness Cora A. Buchanan, and in refusing to permit her to testify and identify warrants and vouchers of the telephone company. Shanklin v. McCracken, 140 Mo. 348; Shanklin v. McCracken, 151 Mo. 587; Lynn v. Hockaday, 162 Mo. 111; Johnson v. Burks, 103 Mo. App. 230; Brown v. Patterson, 224 Mo. 652. (3) The trial court erred in giving defendant's instruction "A," to the jury. It was error to submit this so-called agency to the jury. Manufacturing Co. v. Henry, 44 Mo. 263; Irvin v. Chiles, 28 Mo. 576; Reese v. Garth, 36 Mo. 641; Manufacturing Co. v. Hunter, 87 Mo. App. 50; Electric Co. v. Lewis, 86 Mo. App. 612; State ex rel. v. Rau, 93 Mo. 126; State ex rel. v. Kennedy, 163 Mo. 511.

JOHNSON, J.—Plaintiff sued to recover damages for the breach by defendant of a contract for the sale and delivery of shares of stock in a telephone corporation. The answer is a general denial. A trial resulted in a verdict for defendant but on motion of plaintiff the court set aside the verdict and granted a new trial on the ground, stated in the order, of error in giving instructions "B" and "C" asked by defendant. Dissatisfied with this action of the court, defendant brought the case here by appeal.

Defendant was the president and manager of the California Telephone Company, a corporation owning and operating a telephone exchange in the city of California. The capital stock of the company was

$9000, divided into ninety shares of the par value of
$100 each.   Defendant owned twenty shares and the
remaining stock was held by various persons residing
in California.   Plaintiff lived in Shelbina and was en-
gaged in the business of buying and selling telephone
exchanges.   In July, 1910, the parties began negotia-
tions for the purchase by plaintiff of a controlling in-
terest in the stock of the company.   The negotiations
were conducted chiefly by correspondence and the let-
ters written by plaintiff were not preserved by defend-
ant and as no copies of them were kept by plaintiff
their contents were the subject of a sharp dispute at
the trial.   Plaintiff testified that the proposals he made
in them were for the purchase of the stock from de-
fendant while defendant testified that in the purchase
of the stock it was understood he was acting as the
agent of plaintiff as to all the shares except those
owned by him which were to be included in the sale.

It is conceded plaintiff did not offer to pay the
full purchase price of the stock at the time of delivery.
At first he offered to make a down payment of $2000
and to give defendant his notes for the remainder se-
cured by a chattel mortgage on all of the stock to be
purchased.   Later he found it would be inconvenient
for him to pay more than $1500 on the purchase price
and he wrote defendant to that effect and further ob-
jected to going into debt so deeply.   Under date of
July 16, 1910, defendant wrote plaintiff as follows:

"Yours of the 15th inst. recd.   Contents noted.
You say you do not want to go in debt so much.   Now
if you want the exchange I will make you a proposition
that you cannot afford to pass up for any trade.   I will
retain 2000 instead of $1000.   You will have 9000 only
invested.   As to terms you can pay $1500 down and
balance as you want to.   Now if you want the chance of
your life come at once as I am going to make a deal in
a few days.   In regard to your farm you can trade it

for real estate here I think without any trouble. Let me hear at once.''

On August 11, 1910, plaintiff, according to his testimony, mailed an offer to defendant to purchase seventy shares for $8500, to pay down $1500, and to discharge the remainder of the purchase price in deferred payments. Defendant replied by letter but his reply is not in the record and we do not know its contents. Evidently it was favorable to the continuance of the negotiations and evoked a response from plaintiff to the effect that he would go to California to close the deal in person. The record relating to the correspondence preceding plaintiff's visit to California which occurred August 22, 1910, is very unsatisfactory, but we are able to say with certainty that the letters do not evidence a binding contract between the parties. Plaintiff himself testified that there were some ''variations'' between the terms of sale agreed upon in the letters and those in the contract finally made by the parties at the end of their personal negotiations. One of the conceded changes was an increase of the purchase price of the seventy shares from $8500 to $8554. The contract that was finally entered into was made at California and the terms of that contract are a matter of controversy.

We shall not go into the details of the evidence bearing on this subject. The evidence of plaintiff to the effect that defendant undertook the sale and delivery on the first day of the following month of seventy shares of stock at the agreed price is not only substantial but, as we shall show, must be treated as conclusive. The day after the contract had been made and after plaintiff had returned home, defendant telephoned him that the contract could not be carried out and also wrote him a letter in which defendant said: ''Complications have arisen which cannot be adjusted. I am returning you papers as per agreement.'' The papers referred to were plaintiff's check of $1500 for

the down payment and notes he had executed for the deferred payments. These papers, together with a chattel mortgage executed by plaintiff to secure the deferred payments and which covered the stock to be transferred had been placed by the parties in the hands of a banker at California with the understanding that the check, notes and mortgage were to be delivered to defendant on delivery by him to the banker for plaintiff of the seventy shares of stock. These deliveries were to be made on the first day of the following month and the papers were to remain in the banker's hands until that time. But finding that he could not procure the stock necessary to consummate the sale defendant obtained the papers from the banker, destroyed the chattel mortgage and sent the other papers to plaintiff. Plaintiff states that a bill of sale executed by defendant conveying to him the seventy shares of stock was placed in the hands of the banker with the other papers but this statement is denied by defendant. The excuses offered by defendant for procuring these papers from their custodian and destroying at least one of them are too flimsy to merit serious consideration. His conduct was highhanded and inexcusable and as it resulted in the destruction of important documentary evidence, we shall accept as proved the statement of plaintiff that there was a bill of sale among the papers deposited with the banker which, in form and substance, bound defendant, as vendor, to deliver the shares of stock to the banker for plaintiff's benefit. Every presumption is against the despoiler of documentary evidence. "His conduct is attributed to his supposed knowledge that the truth would have operated against him." [1 Greenleaf on Ev., Sec. 37.] It is said by our own Supreme Court in Pomeroy v. Benton, 77 Mo. l. c. 87:

"Numerous instances are given in the books of the like application of the rule, where it is held that spoliation of documentary evidence being proved

against a defendant, that thereby he is held to admit the truth of the plaintiff's allegations; and this upon the ground that the law, in consequence of the fraud practiced, in consequence of the spoliation, will presume that the evidence destroyed would establish the plaintiff's demand to be just.''

To permit the despoiler to dispute his adversary's statement of the contents of the destroyed document would be to permit him to profit by his own wrong— to gain the very advantage his lawless act was designed to secure. Applying this rule we must hold that inasmuch as defendant admits the destruction of certain papers having an important bearing on the relation existing between him and plaintiff, we should assume, as a matter of law, that the papers deposited with the banker evidenced a contract of sale in which defendant was the vendor and plaintiff the vendee and disproved the assertion of defendant that he was merely the agent of plaintiff.

With the case in such posture, i. e., with the contract of sale admitted and with the breach of defendant indubitably established, there was only one issue of fact to go to the jury, viz., the quantum of plaintiff's damages. We find in the instructions given at the request of defendant that he was allowed the benefit of the defense of agency. This was prejudicial error for which a new trial should have been granted.

The instructions of defendant which the court concluded were erroneous related to the measure of damages and directed a verdict for defendant unless the jury should find that plaintiff had suffered substantial damages from the breach. Regardless of whether or not he sustained actual damages, plaintiff was entitled to maintain an action for the wrong inflicted upon him. A breach of contract is a wrong, an injury, and the rule is fundamental that for every actionable injury there is an absolute right to damages. If no actual damages are proved the legal im-

plication of damages remains and nominal damages should be allowed. [Fulkerson v. Eads, 19 Mo. App. l. c. 623; Lampert v. Drug Co., 119 Mo. App. l. c. 693.] The instructions were erroneous and the error was sufficient to warrant the order allowing a new trial.

The point, made by plaintiff, of error in the ruling of the court that the wife of defendant was disqualified from giving testimony relating to certain issues in the case is not well taken. See Fishback v. Harrison, 137 Mo. App. 664, in which will be found an answer to the argument of counsel for plaintiff on this point.

We find no other error in the record. The judgment is affirmed. All concur.